IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **JOSE ANTONIO CASIANO TORRES** | * | |
| Plaintiff | * | |
| v. | * | Civil No. 07-1714 (SEC) |
| **DON KING PRODUCTIONS, INC., et al** | * | |
| Defendants | * | |

OPINION AND ORDER

Pending before this Court is Co-defendant Don King Productions, Inc.'s ("DKP") Motion to Dismiss (Docket # 13), Co-defendant Marcus W. Corwin, P.A.'s ("MWCPA") separate Motion to Dismiss, and Plaintiff's Consolidated Memorandum of Law and Opposition to Defendants' Motions to Dismiss (Docket # 25). After reviewing the filings, the exhibits, and the applicable law, DKP's motion to dismiss it is hereby **GRANTED**, in light of which MWPA's motion to dismiss is found **MOOT**.

**Factual and Procedural Background**

Plaintiff, a legal resident of Puerto Rico, has brought suit against Defendants under diversity jurisdiction. Plaintiff alleges that since the year 2000, Defendants have filed four lawsuits against him for the illegal interception and transmission of boxing matches and that all of these lawsuits have been dismissed. See Docket # 1 at ¶ 7-8. He alleges that these

1

lawsuits were based on "recklessly prepared affidavits," and that Defendants engaged in "judge shopping." Id. at ¶ 14-16. As a result, Plaintiff allegedly spent great sums of money on attorney's fees, and other court expenses, experienced emotional anguish, lost business at his bar, and saw his reputation in the community damaged.

Plaintiff further alleges that this is part of a business strategy to bring hundreds of frivolous lawsuits in order to collect settlements. Id. at ¶ 24. According to Plaintiff, this strategy constitutes harassment and negligence in violation of Article 1802 of the Puerto Rico Civil Code. 31 P.R. Laws Ann. § 5141.  He requests declaratory relief from future lawsuits and compensatory damages. In turn, Defendants allege that they instituted three of the claims based on illegal interceptions and broadcasts of three different boxing matches occurring in different years, and constituting three separate causes of action.[1] Moreover, they based their claims upon sworn and notarized reports by auditors who witnessed the unauthorized broadcasts at Plaintiff's bar, and that the affidavits "clearly acted as probable cause." Docket # 14 at 9 & 11.

The first case DKP brought against Plaintiff was dismissed with prejudice after DKP moved for dismissal. See DKP v. Baby's Pizza et.al. No. 02-1306 at Docket # 124 (D.P.R. Feb. 26, 2003). However, during the course of the action, Plaintiff allegedly admitted that he had not acquired a commercial license for broadcast. Docket # 14 at 9. The second case, Don King Productions, Inc. v. Negocio El Cruce, No. 04-1877 at Docket # 242 (D.P.R. Sep. 25,

---

[1] One case was dismissed without prejudice, and then re-filed.

2006), was dismissed without prejudice after a change in the interpretation of the Communications Act, and the district court's refusal to allow for an amended complaint under the relevant section.

DKP's third action against Plaintiff, Don King Productions, Inc. v. Cucho Bar, et al, 05-1177 (D.P.R. Jul. 26, 2006., was dismissed without prejudice so DKP would have the opportunity to include Plaintiff's insurance company. Plaintiff protested said dismissal without prejudice, but did not request sanctions, or allege malicious prosecution. See Cucho Bar, No. 05-1177 at Dockets ## 112-115. In the final case in question, both parties agreed to dismiss with prejudice. See Don King Productions, Inc. v. Cafeteria Chicos Burger, et al, No 06-1742 (D.P.R. Mar. 15, 2007). Plaintiff did not seek costs, attorney's fees, or any other punitive remedy against DKP.

DKP's motion to dismiss is based on arguments that Plaintiff has failed to state a claim, while Co-defendant MWCPA bases his motion to dismiss on different grounds. MWCPA alleges that it does not have minimum contacts with this jurisdiction, and that its only interaction with Puerto Rico has been to send letters informing Plaintiff of his alleged illegal interception of DKP's broadcast. Docket # 16 at 4. Accordingly, MWCPA argues that this Court does not have *in personam* jurisdiction over him in the present matter.

**Standard of Review**
*Fed. R. Civ. P. 12(b)(2)*

In assessing whether dismissal for lack of personal jurisdiction is appropriate, the burden is on the plaintiff to prove that personal jurisdiction over the defendant exists. Co-

Defendants' motion to dismiss should be addressed as a motion under FED.R.CIV.P.12(b)(2). Pursuant to said rule "plaintiffs bear the burden of proving the court's personal jurisdiction over the defendant." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F. 3d 42, 50 (1st Cir. 2002); Negrón-Torres v. Verizon, 478 F. 3d 19 (1st Cir. 2007). When, as here, personal jurisdiction is contested, plaintiffs need to provide evidence of the "**facts** upon which the existence of jurisdiction depends." United Electrical, Radio & Machine Workers of America et al. v. 163 Pleasant Street Corp., 960 F. 2d 1080, 1090 (1st Cir. 1992)(quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936)).

In evaluating a motion to dismiss for lack of personal jurisdiction, the Court may choose from several methods in order to determine whether the plaintiff has met its burden. Phillips v. Prairie Eye Center, 530 F.3d 22 (1st Cir. 2008); Daynard, 290 F.3d at 50-51. When ruling on a motion to dismiss without holding an evidentiary hearing, the *prima facie* standard governs such determination. The *prima facie* standard is the least taxing and most common of these standards, and requires plaintiff to proffer evidence "which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Prairie Eye Center, 530 F.3d at 26 (quoting Daynard, 290 F.3d at 51). These facts should be specific and supported by evidence that goes beyond the pleadings. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138 (1st Cir. 1995). As such, they shall be construed "in the light most congenial to the plaintiff's jurisdictional claim." Daynard, 290 F. 3d at 51. The Court may also "add to the mix facts put forward by the defendants, to the extent that they are

4

uncontradicted." Id.

On the issue of personal jurisdiction in contract cases, the Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985).

*Fed. R. Civ. P. 12(b)(6)*

In assessing whether dismissal for failure to state a claim is appropriate, the court must take "plaintiffs' well-pleaded facts as true and [indulge] all reasonable inferences therefrom to their behoof." Buck v. American Airlines, Inc., 476 F. 3d 29, 32 (1st Cir. 2007). "In conducting that tamisage, however, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." Id. at 33; see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007). Complaints do not need detailed factual allegations. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). However, factual allegations must be enough to raise a right to relief above the speculative level. Id. *Twombly* at 1965**.**

**Applicable Law and Analysis**

While not explicitly stated as so in the Complaint, this action essentially claims

5

malicious prosecution and libel under Puerto Rico law. Therefore, this Court will examine each of these claims separably in order to ascertain their applicability to the present controversy.

*Malicious Prosecution*

This Court has entertained similar suits for malicious persecution under Puerto Rico law. See, e.g., Puerto Rico Am. Ins. Co. V. Burgos-Diaz, No. 01-1186, 2006 U.S. Dist. Lexis 07770 (D.P.R. Nov. 29, 2006). Burgos-Diaz, reiterated that the Supreme Court of Puerto Rico's general policy for the abuse of legal proceedings is the imposition of costs and attorney's fees. See Gimenez Alvarez v. Silen Maldonado, 131 D.P.R. 91, 1992 P.R. Dec. 95 at 97 (1992). Nevertheless, there is an exception for malicious prosecution if a Plaintiff can prove the following elements: "(1) a civil action was instituted (2) maliciously and without probable cause, (3) the case ended favorably to the plaintiff (defendant in the initial civil action) and (4) the plaintiff alleging malicious prosecution sustained damages thereby." Id. (citing Fonseca v. Oyola, 77 P.R. 496, 499 (1954)).

However, this is only available in extreme situations, and the Supreme Court of Puerto Rico has clearly established that there is not a *per se* civil damages remedy as the consequence of a frivolous civil suit. In other words, merely showing that a party has instituted a suit negligently is insufficient to support a malicious prosecution action. Id. at 5; see also  Silen, 131 P.R. Dec. at 96; Reyes-Cardona v. J.C. Penny & Co., Inc., 694 F.2d 894, 897 (1st Cir. 1982). In Reyes-Cardona, the First Circuit underscored that Puerto Rico

jurisprudence had evolved from the application of the common law doctrine of malicious prosecution to a civil law approach. However, even then the standard was much higher than a general Article 1802 claim:

> . . . civil law as well as common law jurisdictions seem to have imposed fairly strict limitations upon tort actions based on the bringing of a prior civil suit, requiring a showing of recklessness, bad faith, intent to cause harm, gross error, abuse of the right to bring a suit, or the like.

Id. at 897. Furthermore, Silen quotes the malicious prosecution standard outlined in Fonseca, which suggests that Puerto Rico jurisprudence has reverted to the common law approach, because Fonseca relies upon the standard developed in Stewart v. Sonneborn, 98 U.S. 187, 24 L.Ed. 116 (1878). Accordingly, this Court cannot apply an Article 1802 negilgance analyis to the case at hand, and must use the four-part test outlined in Silen. Therefore, as there is no dispute regarding the existence of the civil actions, this Court will proceed to assess if Defendants' prior suits filed by DKP against Plaintiff were instituted maliciously and without probable cause, and if they ended favorably for Plaintiff.

DKP's strategy of filing repeated lawsuits against parties who have allegedly illegally broadcast its boxing matches is obviously meant as a deterrent. As such, it has the potential to turn into a mechanism to maliciously harass suspected violators. However, the company also has a right to pursue redress for the illegal broadcast of its boxing matches. In the case at hand, DKP alleges that the suits in question correspond to three different and separate illegal broadcasts at Plaintiff's bar, and that these allegations are substantiated by notarized affidavits. See Docket # 14 at 9. Nevertheless, Defendants have failed to include these

affidavits, which they refer to as "Exhibit 10" in their filings. The error is not consequential, because Plaintiff does not dispute the affidavits' existence, in fact he affirms the suits are based on them. Instead, he argues that they are insufficient to overcome his allegations of malice. See Docket # 25 at 14; Docket # 1 at ¶ 14.

Nevertheless, this Court finds that DKP had reason to believe that Plaintiff broadcast its boxing matches illegally, because of notarized affidavits prepared by privately hired investigators. These affidavits constitute grounds for probable cause, and show that DKP's actions were not unfounded. Given that DKP had no other reason to file suit, besides its belief that Plaintiff showed its broadcast without having obtained the proper commercial license, it is difficult to imagine malice within this context.

Another problem facing Plaintiff is that none of the abovementioned cases were decided favorably in his favor on the merits. Plaintiff refers to "constant litigation." However, three of the four cases brought by Defendant were for discreet alleged violations of the Communications Act. None of the cases reached the trial stage, nor were any terminated through dispositive motions, either in favor of Plaintiff or Defendants. All ended through procedural or stipulated dismissals, two of which were without prejudice. This Court cannot infer from those cases that DKP intentionally presented unfounded claims against Plaintiff, especially in light of the fact that no claims for attorneys fees or other sanctions were presented within the course of the prior controversies between the parties. While this Court cannot agree with the assertion that a malicious prosecution claim must in all circumstances

be brought as a compulsory counterclaim, Plaintiff's previous inaction in seeking protection and redress from suits that he now alleges are malicious is somewhat vexing.

The standard in this case is not mere negligence under Article 1802, as Plaintiff suggests, rather a showing of malicious intent, or recklessness, is necessary. For the abovementioned reasons, this Court concludes that Plaintiff has not presented allegations seriously imputing malicious behavior on the part of Defendants. Furthermore, the allegations from both parties suggest that the suits were based on notarized affidavits that Plaintiff illegally broadcast pay-per-view boxing matches at his bar, which clearly constitutes probable cause for the filing of a civil action. As such, Plaintiff has not set forth sufficient facts to support each requirement of a malicious prosecution case and, as such, it is hereby **DISMISSED WITH PREJUDICE**.

*Libel*

There is a strong public policy in favor of protecting "broad and free access to the courts." Silen, 131 P.R. Dec. at 98.  Commonwealth courts have held that petitions filed in court are privileged communications since 1928, and "a petition filed in the court is a privileged communication [that] cannot be deemed libel." Silen, 131 P.R. Dec. at 100. Under the Libel and Slander Act of Puerto Rico, "[a] publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law." Id.. at 99. The Puerto Rico Supreme Court further pointed out that a complaint is deemed a publication made in a judicial proceeding and "any statement

9

pleaded therein shall not be deemed malicious for purposes of the libel action if it has a bearing on the issue in controversy." Id. at 99-100. Plaintiff's claims are brought on diversity grounds, and he clearly has no legal right to a damages action for libel under Puerto Rico law. Therefore, the action in libel is hereby **DISMISSED WITH PREJUDICE**.

*Timeliness & Personal Jurisdiction*

As this Court has concluded that Plaintiff lacks grounds for a malicious prosecution and libel claim, Defendants' arguments regarding timeliness and personal jurisdiction are **MOOT**.

**Conclusion**

For the reasons set herein, Defendants' Motion to Dismiss is hereby **GRANTED**, and Plaintiffs' claims for libel and malicious prosecution against Defendants are hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of February, 2009.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

10